UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARCIA SCHORR,<br><br>                                        Plaintiff,<br><br>                    -v-<br><br>AMERICAN ARBITRATION ASSOCIATION, and THE<br>INTERNATIONAL CENTRE FOR DISPUTE<br>RESOLUTION,<br><br>                                        Defendants. | 21 Civ. 5569 (PAE)<br><br><u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a threshold issue of federal jurisdiction. Plaintiff Marcia Schorr

here sues the American Arbitration Association ("AAA") and the International Centre for

Dispute Resolution ("ICDR") (collectively, the "AAA-ICDR"). The heart of Schorr's grievance

is that the AAA-ICDR wrongly terminated an arbitration in which she was a party before a

decision on the merits could be reached, and in the course of which she had incurred fees and

expenses. As damages, Schorr seeks from the AAA-ICDR the damages for which her arbitration

adversary was allegedly liable on Schorr's claims, and the fees and expenses Schorr had incurred

and advanced to the AAA-ICDR.

Schorr now moves to remand this case, which was originally filed in New York state

court and was removed to this Court by the AAA-ICDR. Schorr argues that this Court lacks

subject matter jurisdiction over her claims. For the reasons below, the Court denies the motion

to remand, holding that Section 203 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 203,

confers such jurisdiction and that removal of this action was proper under Section 205 of the

FAA, *id.* § 205.

I.      **Background**

A.      **Factual Background**

1.      **The Operating Agreement and Its Arbitral Provisions**

In September 2018, Schorr entered into a written "Operating Agreement" with an unnamed "Respondent." Respondent is a New York resident and national of the United States, United Kingdom, and Cuba. The Operating Agreement aimed to establish a joint venture concerning real property in Cuba. Dkt. 16 (Amended Complaint, or "AC") ¶¶ 4–5.

Under the Operating Agreement, a New York limited liability company would be established as the beneficial owner of title and access rights to approximately 85 acres of rural land located on or near a UNESCO World Heritage Site in Cuba. *Id.* Schorr paid $45,000, along with additional payments totaling $3,696.10, for a one-half interest in the property rights. Schorr alleges that her interest, in fact, is worth much more given the substantial difficulties in obtaining property rights in Cuba. *Id.* ¶¶ 5–7. Respondent was to hold the property rights in his name on behalf of the established company. *Id.* ¶¶ 5–6 & n.5.

The Operating Agreement provides that all disputes thereunder be settled by arbitration in New York County, and administered by the AAA in accordance with its Commercial Arbitration Rules. *Id.* ¶ 10. The Operating Agreement also includes an "Inquest Clause." It provides:

> The parties agree that failure or refusal of a party to pay his/her required share of the deposits for arbitrator compensation or administrative charges shall constitute a waiver by that party to present evidence or cross-examine witness [sic]. In such event, the other party shall be required to present evidence and legal argument as the arbitrator(s) may require for the making of an award. Such waiver shall not allow for a default judgment against the non-paying party in the absence of evidence presented as provided for above.

*Id.* ¶ 12.

Schorr alleges that the AAA-ICDR encourages contracting parties whose agreements provide for AAA arbitration to include such a clause, to incent parties to pay arbitral expenses:

> The Commercial Rules provide parties with certain remedies if arbitrator compensation or administrative charges have not been paid in full by either side. However, parties can agree to certain consequences (*i.e.*: waiver) if either party fails to pay its share of required deposits for arbitrator compensation or administrative charges by including the following option [re: the Inquest Clause].

*Id.* ¶ 18 (brackets in original). The Inquest Clause in the Operating Agreement, Schorr alleges, was drawn verbatim from the AAA-ICDR's "ClauseBuilder" tool, an online drafting tool the organization advertises on various websites. *Id.* ¶¶ 13–17. The ClauseBuilder tool includes terms and conditions stating: "The AAA makes no representations or warranties regarding the enforceability of clauses or the AAA's acceptance for administration of matters that might be based upon the ClauseBuilder." *Id.* ¶ 21.

The Operating Agreement also incorporates by reference the AAA's Commercial Rules. *Id.* ¶ 61; *see* Dkt. 7-2. Those rules state, *inter alia*, that "[t]he parties, by written agreement, may vary the procedures set forth in these rules." AC ¶ 61.

### 2.    The Underlying Dispute

On February 25, 2020, Respondent informed Schorr that he intended to sell the property rights covered by the Operating Agreement to an undisclosed buyer, without Schorr's consent, within 48 hours. *Id.* ¶ 23.[1] That same day, Schorr filed a demand for arbitration with the AAA. She sought money damages and a preliminary injunction preventing Respondent from disposing of the property rights pending outcome of the arbitration. *Id.* ¶ 25 & n.9.

---

[1] To date, Schorr does not know whether the property rights were, in fact, sold. AC ¶ 24.

3

### 3.     Schorr's Fee Payments

As a precondition to accepting the case for arbitration, the AAA-ICDR required that Schorr pay it a $3,750 fee.  Schorr paid that fee.[2]  *Id.* ¶ 27.  The AAA-ICDR then appointed an emergency arbitrator to hear Schorr's preliminary injunction application.  *Id.* ¶ 30.  On February 27, 2020, the AAA-ICDR asked Schorr to pay a $19,950 deposit for the emergency arbitrator's compensation.  It warned her that failure to pay could result in the emergency arbitrator's postponing or terminating the proceeding.  *Id.* ¶ 31.  Schorr again paid.  *Id.* ¶ 32.  Respondent unsuccessfully attempted to recuse the emergency arbitrator.  *Id.* ¶ 33.

On March 16, 2020, the emergency arbitrator granted Schorr's application for a preliminary injunction, and ordered Respondent to pay 50% of the costs (subject to further allocation in a final arbitral award) that Schorr had incurred in connection with the application.  *Id.* ¶¶ 37–38.  Respondent never did so.  *Id.* ¶ 38.  On March 20, 2020, the AAA-ICDR advised the parties that it would bill Schorr and Respondent "in equal shares" for all arbitral fees and expenses.  *Id.* ¶ 39.

On April 28, 2020, the AAA-ICDR appointed a new arbitrator to preside over the balance of the arbitration.  *Id.* ¶ 40.  Respondent unsuccessfully attempted to recuse that arbitrator, too.  *Id.* ¶ 41.

On May 4, 2020, the AAA-ICDR notified the parties that the arbitrator requested a $5,000 deposit for his fees, to be paid by May 18, 2020.  It again warned that failure to pay could result in a postponement or termination of the proceedings.  *Id.* ¶ 43.  Schorr paid her $2,500 half of the fees; Respondent did not.  *Id.* ¶ 45.  On May 19, 2020, the AAA-ICDR requested that

---

[2] Schorr claims she paid fees to the AAA-ICDR believing that she would have the opportunity to recover them from Respondent as part of the eventual arbitral award.  AC ¶¶ 28, 32, 45, 58, 65.

4

Schorr pay the remaining $2,500 fees no later than May 21, 2020. *Id.* ¶ 46. On May 20, 2020, Schorr paid the additional $2,500. *Id.* ¶ 47.

On an unspecified date thereafter, the AAA-ICDR notified Schorr that the emergency arbitrator was owed an additional $5,054, as a precondition to the arbitration going forward. Schorr paid this sum, too. *Id.* ¶¶ 48, 50. On May 29, 2020, the AAA-ICDR advised that Schorr's advancement of 100% of arbitration fees would be "subject to reallocation and shall be assessed by the arbitrator in the final award." *Id.* ¶ 51.

On June 26, 2020, the AAA-ICDR requested that Schorr alone pay an additional $5,000 deposit by July 16, 2020. *Id.* ¶ 55. Rejecting a request Schorr made that each party pay half of that sum, the arbitrator assured Schorr that he would entertain an application to assess the fees against one party before rendering a final award. *Id.* ¶ 57. Schorr paid the full $5,000. *Id.* ¶ 58.

Sometime during summer 2020, given Respondent's failure to pay any part of the fees and expenses of the arbitration to date, Schorr requested that the arbitrator "enforce the Inquest Clause and to thereby conclude the arbitration by holding an inquest on damages." *Id.* ¶ 59. On September 4, 2020, the arbitrator declined to do so, on the ground that it conflicted with AAA Commercial Rule 57(b). That rule states, in relevant part, "In no event, however, shall a party be precluded from defending a claim or counterclaim." *Id.* ¶ 60. Schorr alleges that she would not have used the AAA as the arbitral body to resolve this dispute had she known that the AAA-ICDR would not enforce the Inquest Clause in this context. *Id.* ¶¶ 22–23.

On November 6, 2020, the AAA-ICDR requested that Schorr pay $8,041.66 within two weeks, to "cover" $2,541.66 in existing arbitrator fees and a new $5,500 fee that the arbitrator sought. *Id.* ¶ 63. On November 10, 2020, the AAA-ICDR followed up with another request for payment of the $8,041.66. It warned that failure to pay could result in postponing or terminating

the proceeding, and required that payment be made by November 24, 2020. *Id.* ¶ 64. On November 24, 2020, Schorr made the payment. *Id.* ¶ 65.

On December 18, 2020, the arbitrator struck Respondent's counterclaims and nearly all of his discovery requests due to his failure to pay. *Id.* ¶ 66.

In total, Schorr advanced $46,795.66 in fees to the AAA-ICDR. *Id.* ¶ 85.

### 4.     The Termination of the Arbitration

Schorr alleges that, throughout the arbitral proceedings, Respondent was abusive, disrespectful, and threatening to the AAA-ICDR's personnel, the emergency arbitrator, and the arbitrator who followed. *Id.* ¶ 33. Respondent "repeatedly refused" to comply with those officials' orders and directives, and sought to subvert the arbitration process—whereas Schorr complied fully and participated in good faith. *Id.*

For example, during a February 28, 2020 scheduling conference with the emergency arbitrator, Respondent stated that he did not recognize the emergency arbitrator's authority, that the arbitration was "ridiculous" and "illegal," and that the emergency arbitrator and the AAA were acting aggressively and antagonistically towards him. Respondent also allegedly falsely claimed that his non-profit organization was investigating the emergency arbitrator and his law firm for "gross overbilling and attorney misconduct," and sought to recuse the emergency arbitrator, describing him and Schorr's attorneys as "two rich, Jewish, American attorneys." *Id.* ¶¶ 33–34. The AAA-ICDR denied the request. *Id.* ¶ 36. Respondent also, according to Schorr, "repeatedly threatened and abused the arbitrator," including, at every telephonic appearance, purposely "mispronouncing the Arbitrator's Jewish-sounding last name to make it sound 'more' Jewish-sounding." *Id.* ¶ 42. Respondent also allegedly threatened and abused the AAA-ICDR

case managers, accusing them of "aiding and abetting [Schorr's attorney's] illegal actions" and threatening to sue them personally. *Id.* ¶ 67.

On October 21, 2020, as a result of Respondent's behavior, the AAA-ICDR sent an email to the parties, instructing them to comply with the AAA-ICDR Standards of Conduct ("Standards"). *Id.* ¶ 68. The Standards provide that "failure to [abide by the Standards] may result in the AAA declining to further administer a particular case or caseload." *Id.* ¶ 69.

On March 8, 2021, with an arbitral hearing scheduled to be completed by the end of May 2021, Respondent sent a threatening letter to the arbitrator and the AAA-ICDR. *Id.* ¶ 72. In it, among other comments, Respondent warned the arbitrator to "consider [his] position very carefully," threatened the AAA-ICDR with "consequences" if the arbitration were completed, and accused the arbitrator of committing fraud and ethics violations and of having turned the AAA into a "kangaroo court." Respondent claimed that this had caused him "Legal Abuse Syndrome (LAS), a form of post-traumatic stress disorder." *Id.*

On March 19, 2021, the AAA-ICDR notified the parties that it had "'administratively' terminated the arbitration due to 'our employees and the arbitrator hav[ing] been subjected to continued violations of the Standards.'" *Id.* ¶ 74.

Schorr alleges that the AAA never informed her that it could terminate proceedings before completion—and before issuing any award reallocating the fees she had advanced to the AAA-ICDR. She alleges that she would not have applied to the AAA for a preliminary injunction had she known this. *Id.* ¶¶ 29, 46, 64.

**B.    Procedural Background**

On May 12, 2021, Schorr filed suit against the AAA-ICDR in New York state court. Dkt. 1. Schorr alleged that, in bringing her claim before the AAA and advancing fees to the

AAA-ICDR, she acted in reliance that the arbitration would reach completion and result in the issuance of a final award. Schorr alleges that the arbitrator's decision to terminate the proceedings in midstream unlawfully deprived her of the ability to recover (1) the $46,795.66 in fees she had advanced to the AAA-ICDR, and (2) the $48,696 Respondent allegedly owed her for selling the Cuban property rights at issue in the underlying arbitration.

Schorr's lawsuit brought seven claims against the AAA-ICDR. These were for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing claims, based on the termination of the arbitration before its completion; (3) breach of contract and (4) breach of the covenant of good faith and fair dealing claims, based on the arbitrator's failure to enforce the Inquest Clause; (5) false advertising, based on the AAA-ICDR's failure to reveal that it could terminate an arbitration due to a party's misconduct without reimbursing the other party for fees advanced; (6) false advertising, based on the AAA-ICDR's failure to disclose that the Inquest Clause that AAA's website markets is not enforceable in AAA proceedings; and (7) unjust enrichment, based on the retention of arbitration fees Schorr paid.

On June 25, 2021, the AAA-ICDR removed the action to this Court, based on Chapter 2 of the FAA. *Id.* On June 28, 2021, the Court scheduled an initial pretrial conference for August 4, 2021. Dkt. 5. On July 1, 2021, the AAA-ICDR filed a motion to dismiss Schorr's claims in their entirety. Dkt. 8.

On July 12, 2021, Schorr filed the instant motion to remand on the ground that the FAA does not provide subject matter jurisdiction for her lawsuit. Dkt. 14-1. That day, the Court adjourned the scheduled conference pending resolution of the motion to remand, for which it set a briefing schedule. Dkt. 15. On July 14, 2021, Schorr filed the Amended Complaint. Dkt. 16. On July 15, 2021, Schorr filed a letter seeking a stay of briefing on the AAA-ICDR's anticipated

motion to dismiss pending resolution of the motion to remand. Dkt. 17. The Court granted the stay. Dkt. 18. On July 27, 2021, the AAA-ICDR filed an opposition to the motion to remand. Dkt. 19. On July 28, 2021, Schorr filed a reply. Dkt. 20.

## II.    Chapter 2 of the FAA:  Relevant Principles and Provisions

### A.    The New York Convention

The FAA creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625 (1985). The FAA was enacted to reverse "centuries of judicial hostility to arbitration agreements" and "to place arbitration agreements 'upon the same footing as other contracts.'" *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510–11 (1974) (citation omitted).

Relevant here, "Chapter 2 of the FAA . . . expressly grant[s] federal courts jurisdiction to hear actions seeking to enforce an agreement or award falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards." *Vaden v. Discover Bank*, 556 U.S. 49, 59 n.9 (2009). *See* 21 U.S.T. 2517, 330 U.N.T.S. 38 (Dec. 29, 1970), reprinted at 9 U.S.C. § 201 *et seq.* ("New York Convention" or "Convention"); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999). The goals of the Convention (and thus of FAA Chapter 2), are "to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions," *Smith/Enron*, 198 F.3d at 92 (internal quotation omitted), and "to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries," *Scherk*, 417 U.S. at 520 n.15.

### B.    FAA Section 202:  Disputes Subject to the New York Convention

Section 202 of the FAA delineates which disputes fall under the Convention:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202.

The Second Circuit has held that where an agreement or award "involv[es] parties domiciled or having their principal place of business outside [the U.S.]," that agreement or award falls under the Convention. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (citation omitted); *see also Kolel Beth Yechiel Mechilk of Tartikov, Inc. v. YLL Irrevocable Trust*, 863 F. Supp. 2d 351, 354 (S.D.N.Y. 2012) ("In order for an arbitration Agreement to fall under the Convention, it must meet four requirements: '(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject-matter must be commercial; and (4) it cannot be entirely domestic in scope.'") (quoting *Smith/Enron*, 198 F.3d at 92).

### C.     FAA Sections 203 and 205: Jurisdiction and Removal

Two provisions are germane to the central inquiries here: whether there is subject matter jurisdiction over Schorr's claims, and whether removal of those claims was proper, under Chapter 2 of the FAA.

Section 203 vests federal courts with original jurisdiction over actions "falling under the Convention":

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

10

9 U.S.C. § 203.

Section 205 provides for the removal of cases from state to federal court. It provides, in

relevant part:

> Where the subject matter of an action or proceeding pending in a State court relates
> to an arbitration agreement or award falling under the Convention, the defendant or
> the defendants may, at any time before the trial thereof, remove such action or
> proceeding to the district court of the United States for the district and division
> embracing the place where the action or proceeding is pending. The procedure for
> removal of causes otherwise provided by law shall apply, except that the ground
> for removal provided in this section need not appear on the face of the complaint
> but may be shown in the petition for removal.

*Id.* § 205.

## III.  Discussion

The Operating Agreement between Schorr and Respondent undisputedly falls under the

Convention. As required by Section 202, the Operating Agreement is a written agreement

providing for arbitration in New York; the United States is a signatory to the Convention; the

subject matter of the agreement is commercial, involving a joint investment in real property; and

the dispute, which involves the sale of property in Cuba, is not entirely domestic in scope. *See*

*Kolel*, 863 F. Supp. 2d at 354 (citing *Smith/Enron*, 198 F.3d at 92). It is common ground,

therefore, that had an action been brought to confirm, vacate, or enforce an arbitral award arising

from the arbitration that Schorr initiated against Respondent, that action would have properly

been brought in—or removed to—federal court.

This action, however, arises in a different posture—unique in the reported case law. The

party who initiated and funded an arbitration under the Convention here sues the arbitral body

(the AAA-ICDR) for damages for terminating the arbitration in midstream. That termination,

Schorr alleges, at once denied her relief on her claims in that arbitration and resulted in her loss

of the fees she had paid the arbitral body to undertake the arbitration. She claims that the arbitral body thereby breached its contract with her, and violated state statutory and common law.

The parties principally debate whether Section 205 of the FAA supplies subject matter jurisdiction over this dispute. The AAA-ICDR argues that it does. It urges that the dispute's subject matter "relates to an arbitration agreement . . . falling under the Convention," 9 U.S.C. § 205—the Operating Agreement. *See Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("Whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit.").

Schorr counters that Section 205 cannot do so. She cites a line of cases terming Section 205 not a freestanding source of federal jurisdiction, but merely a vehicle permitting the removal of cases as to which there is subject matter jurisdiction under Section 203. *See Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*, 169 F. Supp. 3d 523, 528 (S.D.N.Y. 2016) ("In sum, courts in this District treat Section 205 as a removal statute that does not confer subject matter jurisdiction. In making a determination as to subject matter jurisdiction, courts look to Section 203.").

The Court finds the dispute about whether Section 205 itself supplies subject-matter jurisdiction academic. That is because, the Court holds, this action is "an action or proceeding falling under the Convention," such that Section 203 confers subject matter jurisdiction over it. There is, therefore, no need to consider whether Section 205 can be an independent source of federal jurisdiction.[3] The issue under Section 205 is instead a narrower, case-specific one:

---

[3] Although the Court does not have occasion to address whether Section 205 can independently confer subject matter jurisdiction, a court in this District has so held. *See Banco De Santander Central Hispano, S.A. v. Consalvi Int'l Inc.*, 425 F. Supp. 2d 421, 434 (S.D.N.Y. 2006). The holding in *Banco* was based on Section 205's abrogation of the "well-pleaded complaint rule," on Section 205's broad "relates to" language, and on Congress's intent that Chapter 2 serve as a comprehensive scheme serving federal interests. *See id.* at 427–34 (citing *Scherk*, 417 U.S. at

whether, based on the allegations in this action, it is one whose subject matter "relates to an arbitration agreement or award falling under the Convention" so as to permit removal from state court. 9 U.S.C. § 205. The Court holds that it does.

The Court's sequential analyses of the issues under Section 203 (whether there is subject matter jurisdiction) and under Section 205 (whether removal is statutorily authorized) follow.

### A.    Subject Matter Jurisdiction Under Section 203

In arguing that Section 203 does not confer jurisdiction, Schorr notes that the Second Circuit has interpreted Section 203's grant of jurisdiction narrowly. As Judge Gardephe has synthesized the case law, the Circuit historically has found jurisdiction under Section 203 only over "'actions to compel, confirm, or vacate an arbitral award' and 'several other measures . . . in aid of an arbitration.'" *Albaniabeg Ambient*, 169 F. Supp. 3d at 528–29 (quoting *Holzer v. Mondadori*, No. 12 Civ. 5234 (NRB), 2013 WL 1104269, at *6 & n.8 (S.D.N.Y. Mar. 14, 2013) (citing *Scandinavian Reins. Co. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60 (2d Cir. 2012); *Goel v. Ramachandran*, 823 F. Supp. 2d 206, 215 (S.D.N.Y. 2011); *Emirates Int'l Inv. Co., LLC v. ECP Mena Growth Fund, LLC*, 11 Civ. 9227 (JGK), 2012 WL 2198436, at *5–6 (S.D.N.Y. June 15, 2012)).

Schorr's argument, however, takes too crimped a view of Section 203. Section 203's text does not limit it to proceedings compelling arbitration or confirming or vacating arbitral awards. The statutory language is broader ("an action or proceeding falling under the Convention"), and

---

520); *see also Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 655 (2d Cir. 1996) ("[W]here the removal jurisdiction is part of 'a "comprehensive scheme" comprising both pure jurisdictional provisions and federal law capable of supporting Article III "arising under" jurisdiction,' the jurisdictional grant is effective.") (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983)).

as Judge Gardephe's synthesis recognized, the caselaw has held it to cover proceedings that in various ways were "in aid of arbitration." *Id.*

The Second Circuit, for example, found federal jurisdiction under Section 203 over a proceeding in which a district court was asked to act "to protect . . . prior judgments by staying incompatible arbitral proceedings otherwise governed by the Convention." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 n.6 (2d Cir. 2011). The Circuit so held notwithstanding earlier "dicta . . . suggest[ing] that the New York Convention is enforceable only where the party invoking its provisions seeks either to compel arbitration or to enforce an arbitral award, in light of the principle that the Convention should be interpreted broadly to effectuate its recognition and enforcement purposes." *Id.* (internal quotation marks and citations omitted); *see also CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 372–75 (S.D.N.Y. 2014) (finding jurisdiction under Section 203 over proceeding to enjoin an arbitration, and collecting cases similarly holding); *Emirates*, 2012 WL 2198436, at *5–6 (finding jurisdiction under Section 203 to decide preliminary injunction pending arbitration).

In this case, the underlying Chapter 2 proceeding before the arbitrator ended in an anomalous manner. Rather than the arbitrator's issuing an award resolving the merits, the arbitral body administratively terminated the proceeding in midstream based, apparently, on Respondent's misconduct. That left petitioner Schorr to bear the fees she alone had paid to initiate the proceeding and fund its progress, and without obtaining a resolution of her claims or the relief she sought from Respondent.

But although Schorr does not have a formal arbitral award to that effect to challenge, her lawsuit, in function, challenges the bottom-line outcome of that Chapter 2 proceeding. Indeed, her breach of contract claims seek from the AAA-ICDR the entire relief that she had sought but

14

was denied in the arbitration: damages for Respondent's alleged breach of the Operating Agreement, and the recoupment of the arbitration fees Schorr had advanced.

To be sure, because the Chapter 2 proceeding ended in an administrative termination as opposed to an award, Schorr's attack on this adverse outcome in this lawsuit does not seek, in form, a vacatur. But in substance, resolution in Schorr's favor of her claims in this lawsuit "would essentially accomplish the same goal: vacatur of the Arbitration Decision." *Kolel*, 863 F. Supp. 2d at 356.[4] *See also Beiser*, 284 F.3d 665 (action properly removed to federal court before arbitration had been completed); *York Hannover Holding A.G. v. Am. Arbitration Ass'n*, 794 F. Supp. 118 (S.D.N.Y. 1992) (same); *Acosta v. Master Maint. & Constr., Inc.*, 52 F. Supp. 2d 699, 702 (M.D. La. 1999) (same). Contrariwise, were this litigation to result in a judgment against Schorr, it would—at least as to Schorr's claims seeking to recoup the $46,795.66 in fees she advanced the AAA-ICDR—effectively confirm that aspect of the arbitral outcome.[5]

That Schorr's lawsuit is a means to set aside the arbitrator's disposition of the Chapter 2 arbitral proceeding may alternatively be illustrated this way. Had Schorr, after the administrative termination of the Chapter 2 arbitral proceeding, brought an injunctive action seeking to compel the AAA-ICDR to revive and try to completion Schorr's damages action, the existence of federal jurisdiction over that injunctive action would be apparent. Schorr instead has attacked the same termination decision by means of a damages action seeking the identical monetary outcome, save that the arbitral body, not Respondent, is asked to make Schorr whole.

---

[4] The Court does not have occasion to consider, on the pending motion to remand, the extent to which the relief that Schorr seeks here from the AAA-ICDR is contractually available to her.

[5] Because Schorr has not sued Respondent in this case, a judgment against her here would not appear to limit her ability to pursue anew—presumably in a new arbitration—the relief she unsuccessfully sought from Respondent in the arbitration.

In this respect, this case resembles *Kolel*, insofar as *Kolel* held that because the removed

action, "[i]n sum and substance," was "an attempt to vacate" an arbitral decision, a federal court

had subject matter jurisdiction over it under Section 203. 863 F. Supp. 2d at 353. The arbitral

panel there had entered a preliminary decision against the plaintiff. *Id.* The plaintiff then filed

an action in state court against members of the arbitral panel, seeking a declaratory judgment that

the preliminary decision was void and unenforceable, and an order enjoining enforcement of and

vacating the decision. *Id.* After the action was removed, the plaintiff sought remand. In finding

jurisdiction under Section 203, Judge Marrero noted that although the preliminary decision was

not styled a "final arbitral award," it in substance "dispose[d] of a discrete set of the claims at

issue in the arbitration" and "there [was] nothing partial or temporary about" it. *Id.* at 356 n.9

(citing *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986)

(interim arbitral award which "finally and definitely disposes of a separate independent claim

may be confirmed although it does not dispose of all the claims that were submitted to

arbitration")). There would have been "subject matter jurisdiction over the . . . suit had it

initially been filed in federal court," Judge Marrero reasoned, and therefore such a court had

jurisdiction under Section 203. *Id.* at 356 (citing *Scandinavian*, 668 F.3d at 71); *see also*

*Landmark Ventures, Inc. v. Cohen*, No. 13 Civ. 9044 (JGK), 2014 WL 6784397 (S.D.N.Y. Nov.

26, 2014) (finding federal jurisdiction under Section 203 where losing party in arbitration

brought action against arbitrator for allegedly making unfair procedural decisions during

arbitration and arbitrator removed case to this Court); *York Hannover*, 794 F. Supp. 118

(similar).

Schorr's remand motion would compel the AAA-ICDR to defend this lawsuit in state court. The AAA-ICDR would have the task there of defending the arbitrator's decision to dispose of the Chapter 2 arbitral proceeding in a manner that denied Schorr any recovery. But that would effectively end run, on account of the unusual form of the arbitral disposition and the unusual nature of this lawsuit, Congress's intent to confer upon federal courts "subject matter jurisdiction over actions seeking to vacate arbitral awards entered in the United States and within the scope of the Convention." *Kolel*, 863 F. Supp. 2d at 356. In various contexts—including under Chapter 2—courts have rejected procedurally novel tacks to evade (or attain) federal jurisdiction. *See, e.g., Venconsul N.V. v. Tim Int'l N.V.*, No. 03 Civ. 5387 (LTS) (MHD), 2003 WL 21804833, at *3 (S.D.N.Y. Aug. 6, 2003) ("Under Defendant's theory, a party could deprive federal courts of the power to entertain requests for interim relief in aid of arbitration under the Convention, and thus insulate itself from such relief, by simply appearing in an arbitration proceeding, thereby obviating the need to compel arbitration.").[6] This Court similarly rejects Schorr's bid here.

Because Schorr's breach of contract claims against the AAA-ICDR effectively seek to vacate an arbitral decision—and because the AAA-ICDR's defense effectively seeks to confirm

---

[6] *See also Control Network Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Loc. Union No. 236*, 145 F. Supp. 3d 161, 164–65 (N.D.N.Y. 2015) ("CNC directs its arguments to the alleged bias of the LMC members and that the grievance procedures were not properly followed. . . . These arguments are proper on a petition to vacate a labor arbitration award. . . . Here, however, CNC failed to timely petition to vacate the LMC's decision. . . . CNC cannot now make such arguments under the veil of a breach of contract claim."); *Musto v. Transp. Workers Union of Am., AFL-CIO*, 818 F. Supp. 2d 621, 640 (E.D.N.Y. 2011) ("Having elected not to [file a petition to vacate or modify a labor board's award], plaintiffs cannot now collaterally attack the . . . award in the context of this hybrid claim for breach of the duty of fair representation against the Union and for breach of contract against American.").

it, at least in part—the Court holds that it has subject matter jurisdiction over those claims under Section 203.

**B.     Removal Under Section 205**

The Second Circuit has yet to interpret Section 205's requirement that the subject matter of an action or proceeding pending in state court "relate[] to an arbitration agreement or award falling under the Convention." But sister circuits and courts within this District have interpreted the phrase broadly, so as, in effect, to treat as removable—as logically would follow—any action within the scope of the federal-court jurisdiction supplied by Section 203. The Fifth Circuit has held that "[w]henever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Beiser*, 284 F.3d at 669. The Ninth Circuit similarly has held that "[t]he phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes." *Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011). And the Eighth Circuit has explicitly adopted the reading of these two circuits. *See Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012) ("[j]oining the Fifth and Ninth Circuits"); *see also Kolel*, 863 F. Supp. 2d at 256 ("Upon consideration of the plain language of § 205, as well as the holdings of the Fifth and Ninth Circuit[s] that 205 should be interpreted broadly, the Court finds that removal was proper here."); *Goel*, 823 F. Supp. 2d at 213–15 (canvassing S.D.N.Y. cases applying *Beiser* framework). This Court adopts that reading.

With Section 205 so read, this action unavoidably "relates to" the Operating Agreement, which in turn undisputedly falls within the Convention.

The gravamen of Schorr's claims is that the arbitrator erred by not invoking the Operating Agreement's Inquest Clause to "conclude the arbitration and hold an inquest on

18

damages." Had an inquest been held, Schorr alleges, she could have recovered the fees she had

advanced to the AAA-ICDR and the damages Respondent owed her for breaching the Operating

Agreement. AC ¶ 59. Instead, the arbitrator declined to proceed against Respondent under the

Inquest Clause, based on AAA Commercial Rule 57(b), which the Operating Agreement

incorporated by reference, on the grounds that that Rule provides that: "In no event . . . shall a

party be precluded from defending a claim or counterclaim." *Id.* ¶ 60. Schorr contends that the

arbitrator misapplied that provision, insofar as the Commercial Rules also allow parties, "by

written agreement, [to] vary the procedures set forth in these rules." *Id.* ¶ 61.

   Adjudicating Schorr's claims requires interpreting the Operating Agreement, the AAA

Commercial Rules that it incorporates by reference, and the relationship among them.  Moreover,

Schorr seeks a money judgment from the AAA-ICDR in the identical amount Schorr demanded

from Respondent.  It follows that "[t]he contents of the [Operating] Agreement could

'conceivably' affect the outcome of the removed action because the allegations necessarily

involve the [Operating] Agreement's [Inquest Clause] provision[,] the proper procedures for the

arbitration, and the [termination] [d]ecision itself." *Kolel*, 863 F. Supp. 2d at 356; *see also id.*

(finding removal under Section 205 proper and distinguishing cases whose resolutions would not

require reading and examining an arbitration agreement that falls under the Convention); *Samsun

Logix Corp. v. Bank of China*, 740 F. Supp. 2d 484, 488–89 (S.D.N.Y. 2010) ("In contrast to the

fact patterns in *Beiser, Acosta*, and *York*, which all arose before arbitration had been completed,

here the Banks are unable to argue that an arbitration agreement provides a defense or other

procedural hurdle to a state court action or other proceeding because in this case the arbitration is

already completed.").[7]  Because this action "relates to" the Operating Agreement, the AAA-ICDR's removal of it was proper under Section 205.  *See Beiser*, 284 F.3d 665; *Infuturia*, 631 F.3d 1133; *Kolel*, 863 F. Supp. 2d at 256; *York Hannover*, 794 F. Supp. at 122–23 (citing cases).

### C.    Other Claims

The Court has found subject matter jurisdiction under Section 203 for Schorr's breach of contract claims against the AAA-ICDR, and has found this action removable under Section 205. To the extent that Schorr brings state-law claims against the AAA-ICDR that are not ones as to which there is subject-matter jurisdiction under Section 203 (*e.g.*, her statutory claims for false advertising), the Court exercises supplemental jurisdiction over those claims.  That is because all of Schorr's claims against the AAA-ICDR arise from the common nucleus of operative fact: the arbitrator's decisions not to invoke the Inquest Clause and to close the case, terminating the arbitration without affording Schorr any relief or fee recompense.  *See* 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 350 (S.D.N.Y. 2005) (noting that court's jurisdiction over claims that "do not fall within 9 U.S.C. § 203 . . . and do not raise a jurisdiction-bestowing federal question in any other respect . . . must [stem] from 28 U.S.C. § 1332, or perhaps from 28 U.S.C. § 1367(a) (supplemental jurisdiction)").

---

[7] That Schorr's claims against the AAA-ICDR do not directly arise under the Convention—but instead arise from the AAA-ICDR's terminating her claims under the Convention as brought against the Respondent—does not change the outcome.  Under Section 205, the "matter need not fall under the Convention; rather, the Agreement must fall under the Convention, and the subject matter of this action must *relate* to the Agreement."  *Goel*, 823 F. Supp. 2d at 213 (emphasis in original); *see also Landmark Ventures*, 2014 WL 6784397 (action against non-signatory arbitrator for allegedly making unfair procedural decisions during the arbitration, removed under Section 205); *York Hannover*, 794 F. Supp. 118 (similar); *Kolel*, 863 F. Supp. 2d 351 (similar).

## CONCLUSION

For the foregoing reasons, the Court denies Schorr's motion to remand. The Clerk of Court is respectfully requested to close the motion at docket number 14.

Having rejected the motion to remand, the Court lifts its stay of briefing on the AAA-ICDR's pending motion to dismiss, *see* Dkts. 6, 18, and sets the following schedule:

Schorr shall file any amended complaint within 21 days of this decision. No further opportunities to amend will ordinarily be granted. If Schorr does amend, the AAA-ICDR, within 21 days of Schorr's filing of an amended complaint, shall: (1) file an answer; (2) file a new motion to dismiss; or (3) submit a letter to the Court, copying Schorr, stating that it relies on the previously filed motion to dismiss.[8]

It is further ordered that if no amended complaint is filed, Schorr shall serve an opposition to the motion to dismiss within 21 days of this Opinion & Order's issuance. The AAA-ICDR's reply, if any, will be due 14 days thereafter.

The Court schedules an initial pretrial conference for Thursday, February 10, 2022, at 4 p.m. This conference will be held telephonically. The parties should call into the Court's dedicated conference line at (888) 363-4749, and enter Access Code 468-4906, followed by the pound (#) key. Counsel are directed to review the Court's Emergency Individual Rules and Practices in Light of COVID-19, found at https://nysd.uscourts.gov/hon-paul-engelmayer, for the Court's procedures for telephonic conferences and for instructions for communicating with chambers.

---

[8] If the AAA-ICDR files a new motion to dismiss or relies on its previous motion, Schorr's opposition will be due 14 days thereafter, and the AAA-ICDR's reply, if any, will be due seven days after that.

Counsel are further directed to prepare a Civil Case Management Plan and joint letter in accordance with the Court's Individual Rules, to be submitted to the Court no later than February 7, 2022.


SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: February 1, 2022
New York, New York